Opinion filed August 2, 2007


















 
 
  
 
 







 
 
  
 
 




Opinion filed August 2, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                               No. 11-05-00402-CV 

                                                      ________

 

               MELVIN
R. STORM FAMILY PARTNERS, L.P., Appellant

 

                                                             V.

                    DWIGHT
NORTHCUTT, INDIVIDUALLY AND D/B/A

                              NORTHCUTT
PRODUCTION, Appellee

                                                              



 

                                          On
Appeal from the 42nd District Court

 

                                                        Coleman
 County, Texas

 

                                                     Trial
Court Cause No. 3778

 



 

                                              M
E M O R A N D U M   O P I N I O N

After a bench trial, the trial court entered judgment
that appellant take nothing in its suit to remove a cloud on its title, for
negligence, for slander of title, and for trespass.  The trial court also held against appellant
on its claims for a declaratory judgment and an injunction.  We affirm.








On September 25, 2003, appellant purchased
approximately 1,183 acres of land in Coleman
 County from the T. Brandt
Family Limited Partnership.  Appellant
filed the deed in Coleman
 County  on September 30, 2003.  Appellee claimed to have an oil and gas lease
upon 480 acres out of the 1,183-acre tract. 
Appellee formerly had been operating under an earlier oil and gas lease
on that same 480 acres since 2000. 
However, the lease under which it is claiming for the purposes of this
lawsuit is dated November 19, 2002.  That
lease was entered into as a result of negotiations between appellee and Brandt
prior to the time that appellant purchased the property.  It is undisputed that the November 2002 lease
was not filed for record until February 28, 2005, after appellant had purchased
the property.  

The trial court found, among other things, that
appellant was not a bona fide purchaser for value without notice of appellee=s rights because appellant was put on
notice of appellee=s rights
under the 2002 lease.  Accordingly, the
trial court entered a take-nothing judgment against appellant.  The trial court awarded attorney=s fees to appellee in the amount of
$9,625.

Appellant brings six issues for us to review.  First, appellant claims that it never had actual
notice of the 2002 lease and that any possession by appellee was not exclusive
and unequivocal.  Next, appellant argues
that the evidence is legally and factually insufficient to constitute
constructive notice of any of appellee=s
rights.  In the third issue, appellant
insists that appellee=s
possession was consistent with the former lease and that it was a bona fide
purchaser of the property.  In its fourth
and fifth issues, appellant claims that the 2002 lease had expired under its
own terms for lack of production. 
Lastly, appellant asks this court to reverse the award of attorney=s fees because the declaratory judgment
request is merely Aincidental
to the issue at hand,@
and this is in actuality a title dispute. 
It further takes the position that appellee did not file a counterclaim
for attorney=s fees
and is not entitled to the award for attorney=s
fees.

We will discuss appellant=s
first three issues together.

Appellee had not filed its 2002 lease for record
when appellant purchased the property.  Tex. Prop. Code Ann. ' 13.001 (Vernon 2004) applies to
unrecorded instruments and their effect on interests in real property.  If it is not filed for record as required, a
conveyance of real property or an interest in real property is void as to a
subsequent purchaser for a valuable consideration without notice.  Section 13.001(a).  The burden of proof on the issue is upon the
one claiming to be a bona fide purchaser to show that it acquired the property
for value, in good faith, and without notice of any third-party claims.  Houston Oil Co. of Tex.
v. Hayden, 135 S.W. 1149, 1152 (Tex.
1911).  The only one of those issues
relevant to this appeal is the notice issue. 








Notice can be either actual or constructive.  Madison
v. Gordon, 39 S.W.3d 604, 606 (Tex.
2001).  Actual notice arises from
personal information or knowledge, while constructive notice is that notice
that the law imputes to one who does not have personal information or
knowledge.  Id.     Constructive
notice arising from the rights of a party in possession of property can be  equivalent to the constructive notice
resulting from the registration of the conveyance of such property.  Chicago Title Ins. Co. v. Alford, 3
S.W.3d 164, 169-70 (Tex. App CEastland
1999, pet. denied).  A purchaser of
property may be charged with notice of the rights of a party in possession of
the property.  Madison, 39 S.W.3d at 606.  The purchaser has a duty to ascertain the
rights of parties in possession if that possession is visible, open, exclusive,
and unequivocal.  Id.;
Strong v. Strong, 98 S.W.2d 346, 348-50 (Tex. 1936). 
And, if it is visible, open, exclusive, and unequivocal, then that
possession constitutes constructive notice of the rights under which that
property is possessed.  Madison,
39 S.W.3d at 607; Alford, 3 S.W.3d at 169. 

The trial court entered findings of fact and
conclusions of law.  We review a trial
court=s
conclusions of law de novo. BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). 
The evidence is reviewed in a bench trial by the same standards as in a
jury trial.  IKB Indus. v. Pro-Line
Corp., 938 S.W.2d 440, 445 (Tex.
1997). When we review the legal sufficiency of the evidence, we do so in the
light most favorable to the verdict, and we disregard all contrary evidence
that could have been disbelieved by a reasonable fact-finder. Ysleta Indep.
Sch. Dist. v. Monarrez, 177 S.W.3d 915 (Tex. 2005). 
We must credit favorable evidence if a reasonable fact-finder could and
disregard contrary evidence unless a reasonable fact-finder could not. City
of Keller v. Wilson,
168 S.W.3d 802 (Tex.
2005).  We will find that the evidence is
legally sufficient if it Awould
enable reasonable and fair-minded people to differ in their conclusions.@ 
See id. at 822.  If the
evidence falls within the zone of reasonable disagreement, we will not
substitute our judgment for that of the fact-finder.  Id.  Although the reviewing court Amust consider evidence in the light
most favorable to the@
findings, Aand indulge
every reasonable inference that would support it[,] . . . if the evidence
allows of only one inference, neither [the fact-finder] nor the reviewing court
may disregard it.@  Id.  AThe
final test for legal sufficiency must always be whether the evidence at trial
would enable reasonable and fair-minded people to@
make the findings Aunder
review.@ Id. at 827. 








A factual sufficiency challenge to issues on which
appellant did not bear the burden of proof requires us to Aconsider and weigh all of the evidence.@ 
Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.CWaco 2000, pet. denied).  We will reverse the Averdict
only if it is so contrary to the overwhelming weight of the evidence that the
verdict is clearly wrong and unjust.@
Id.  However, where the complaining party on appeal
had the burden of proof on the issue, we will reverse for factual insufficiency
only if, Aconsidering
all the evidence, the finding is so contrary to the great weight and
preponderance of the evidence as to be manifestly unjust.@ 
Id.  We weigh all the evidence, both supporting
and conflicting, and may set the finding aside only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Comm=n of Contracts of the Gen. Executive
Comm. of the Petroleum Workers Union of the Republic of Mex. v. Arriba, Ltd.,
882 S.W.2d 576, 582 (Tex. App.CHouston
[1st Dist.] 1994, no writ).  In a
bench trial, the trial court alone determines the credibility of the witnesses
and the weight to be given their testimony, and it may accept or reject all or
any part of that testimony.  Nordstrom
v. Nordstrom, 965 S.W.2d 575, 580-81 (Tex. App.C
Houston [1st Dist.] 1997, pet. denied). 
If, reviewed under these standards, appellee was in visible, open,
exclusive, and unequivocal possession of the property made the subject of this
suit, then appellant  had constructive
notice of the rights of appellee under the unrecorded lease.

While appellee did not have exclusive possession
of the 1,183 acres, he did have exclusive possession of the 480 acres covered
by his unrecorded lease.  Persons or
entities other than appellee held leases on other parts of the property.  But, the record shows that, although many
people were in and out of the ranch for the purpose of conducting oil and gas
activities, only appellee and those entering by virtue of his lease conducted
oil and gas operations on the 480-acre tract. 


The testimony shows that there were many different
lease signs at various locations on the 1,183 acres.  The signs bore the names of many different
companies and individuals who were, in various capacities, conducting oil and
gas operations on the property.  Appellee=s name, along with the designated
operator of his lease, was one of those names that appeared on some of the
signs that related to the 480 acres.  Loy
Marshall Storm, an owner and the managing partner of appellant, had seen the
signs prior to appellant=s
purchase, and appellant introduced pictures of them at trial.








Loy and his father, Melvin, examined the property
some six or eight times, for Amaybe
an hour@ each
visit, before appellant purchased it.  Loy
testified that, although he and his father met appellee on the property during
some of those visits to the property, they did not talk to him about anything
specific.

William Ross Setzler was the real estate agent who
notified appellant that this particular tract of land was for sale.  Another broker, Donnie Gene Stegemoller,
represented the seller.  Loy testified
that Setzler was checking out the rights of parties in possession for
appellant.  Loy had asked him to look
into Awhat was
out there.@  Appellant had received a commitment for a
policy of title insurance, and the policy excluded the rights of parties in
possession.  As a part of his inquiry,
Setzler communicated with the Railroad Commission.  The Railroad Commission gave him information
regarding appellee, including his telephone number.  Setzler also talked to appellee prior to the
closing of the sale to appellant.  He Abasically determined that [appellee]
was involved with some wells there at the house.@

Prior to the date of the closing of the sale to
appellant, Terry Brandt, general partner of the entity that sold the property
to appellant, sent a facsimile to Stegemoller; Stegemoller in turn sent the
facsimile to Setzler.  The facsimile was
of a document that contained the name ADwight
Northcutt,@ gave two
telephone numbers for him, and also contained the statement Aoil wells below house.@

During cross-examination, appellee=s lawyer asked Loy whether he had asked
any of those who were conducting operations on the property, including
appellee, under what oil and gas lease they were operating.  He 
replied that he had not.  During
that cross-examination, the following exchange occurred:

Q.  Did it
ever occur to you to ask them under what oil and gas lease they were operating?

 

A.  No.

 

Q.  Did you
do that?

 

A.  Did I
ask them?  No.

 

Q.  Did you
ask Mr. Northcutt?

 








A.  I don=t know if I did before.  I did after closing to get me some
information.  I couldn=t figure out why he was still out
there.  You know, there=s so much confusion with the whole
deal, there=s no B it=s
hard to tell what was going on.  And he
never provided me any information.

 

Q.  But you
knew [appellee] was coming in and out of there on a regular basis before
closing operating those oil wells?

 

A.  Yeah,
but I didn=t know
who for.

 

Q.  But you
didn=t ask him
before closing?

 

A.  No.[1]

 

The trial court found that appellant had either
actual or constructive notice of the rights of appellee.  Under the standards for review of legal and
factual sufficiency set out earlier in this opinion, we hold that the evidence
legally and factually supports the trial court=s
finding that appellant was not a bona fide purchaser because appellee was a
person in visible, open, exclusive, and unequivocal possession of the oil and
gas interest on the 480 acres at the time that appellant purchased the property
and, as such, that appellant had constructive notice of the rights of appellee,
was charged with the responsibility of determining those rights, and took its
title subject to them.      

Appellant argues that it should not be charged
with constructive notice for the further reason that appellee=s possession was consistent with the
former lease under which appellee operated. 
We disagree.  The rights of
appellee, the party in possession, were determined by the 2002 oil and gas
lease, and appellant is charged with constructive notice of those rights.  Appellant=s
first, second, and third issues on appeal are overruled.

Appellant argues in its fourth and fifth issues on
appeal that appellee=s
oil and gas lease had terminated because there was a cessation of production
during the months of April, May, and June 2004. 
The lease provided for a primary term of ninety days and Aas long thereafter as oil or gas, or
either of them is produced from@
the land.








Appellant requested that the trial court make
findings of fact and conclusions of law. 
Appellant also sent the trial court proposed findings of fact and
conclusions of law.  Those proposed
findings and conclusions included proposals that there had been no production
under the 2002 lease and that it had terminated.  By written order, the trial court denied the
request to enter the proposed findings of fact and conclusions of law.  The trial court concluded that the 2002 lease
was a valid and subsisting lease and that the evidence failed to support any
theory of recovery that appellant had alleged. 
The trial court also entered a take-nothing judgment against
appellant.  

Appellant challenges the legal and factual
sufficiency of the evidence.  The burden
was upon appellant to establish that production had ceased.  Skelly Oil Co. v. Archer, 356 S.W.2d
774, 783 (Tex.
1961).  In order to do that, appellant
had to prove that appellee was not making a profit from the operation of the
wells on the lease.  Id.  Even if the evidence were to establish as
a matter of law that appellee was not making a profit, appellant must still
show as a matter of law or obtain a finding that finds support in the evidence
that a reasonably prudent operator would not have continued to operate the
wells on the lease under the circumstances. 
Id.    

Appellant argues that there was no production
during April, May, and June 2004. 
Appellee testified that there was production from the lease but that
none of the production was sold during those months.  The record reflects that there were heavy
rains in the area for those months.  At
one time, appellee had to get to the wells by boat.  Railroad Commission records showed that there
was no production for those months. 
Appellee testified that there had been a mistake in the records and
that, actually, there had been production for that period of time.  Appellee testified that there was always production
for the requisite term and that revenues always exceeded expenses.  Appellant argues that not only was there no
production in paying quantities but also there was no production in paying
quantities or otherwise.

The trial court was presented with conflicting
evidence regarding production.  As the
trier of fact, the trial court may accept all or may reject all or any part of
the testimony.  Nordstrom, 965
S.W.2d at 580-81.  Under the standards of
review for legal and factual sufficiency, which we have previously set out in
this opinion, the evidence, both legally and factually, supports a finding that
there was no cessation of production under the 2002 lease.   In view of our holding, we need not discuss
appellant=s fifth
issue on appeal.   Appellant=s fourth and fifth issues on appeal are
overruled.








In its sixth and final issue, appellant complains
that the trial court erred when it awarded attorney=s
fees to appellee.  It maintains that
claims for declaratory relief were merely Aincidental
to the issue at hand.@   Then, appellant refers us to Tex. R. Civ. P. 97 and argues that
appellee did not file a counterclaim and cannot, therefore, recover attorney=s fees.

This lawsuit was filed by appellant.  In it, appellant asked for a declaratory
judgment.  In a suit involving a
declaratory judgment, a trial court may award such reasonable and necessary
attorney=s fees as
are equitable and just.  Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997). 
Whether to award attorney=s
fees is an issue committed to the sound discretion of the trial court, and we
will not reverse such an award absent an abuse of that discretion.  Oake v. Collin
County, 692 S.W.2d 454, 455 (Tex. 1985).  A trial court abuses its discretion when it
acts arbitrarily, unreasonably, or without consideration of guiding
principles.  Walker
v. Gutierrez, 111 S.W.3d 56, 62 (Tex.
2003).   Appellant has not shown that the
trial court abused its discretion when it awarded attorney=s fees to appellee.  Appellant=s
sixth issue on appeal is overruled.

The judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

August 2, 2007

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]Loy did, before closing, talk to Vernon Hogg, a lessee in
possession of the property under an unrecorded grazing lease, in an effort to
determine what his rights were concerning the property.  Loy discovered from Hogg that he claimed that
the lease was not a month-to-month lease as Loy had been told.  Hogg made an offer for appellant to take over
the grazing; appellant accepted that offer.